**FILED**

MAR 1 5 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAWRENCE BEAUMONT,

                Plaintiff,

    v.

GOVERNMENT OF THE CITY
OF EDGEWOOD; JEFF HOGAN,
Mayor, Edgewood Council Member;
MIKE KELLY, Deputy Mayor,
Edgewood Council Member;
PAUL CROWLEY,
Edgewood Council Member;
DARYL EIDINGER,
Edgewood Council Member;
DONNA O'RAVEZ,
Edgewood Council Member;
DAVE OLSON,
Edgewood Council Member;
STEVE COPE,
Edgewood Council Member;
MARK BAUER, City Manager;
ED KNUTSON,

                Defendants.

CV.10-1355-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

Plaintiff Lawrence Beaumont ("Beaumont"), appearing *pro se*, filed this civil rights

action on November 2, 2010, against the City of Edgewood ("Edgewood") and various city

employees, including City Manager, Mark Bauer ("City Manager Bauer"), Chief of Police Ed

Knutson ("Chief Knutson"), Mayor and City Council member Jeff Hogan ("Mayor Hogan"),

Deputy Mayor and City Council member Mike Kelly ("Deputy Mayor Kelly"), and City Council

members Paul Crowley, Daryl Eidinger, Donna O'Ravez, Dave Olson, and Steve Cope ("Cope")

("City Council defendants") (collectively "defendants").

Presently before the court is defendants' motion to dismiss (#14) on the grounds of lack

of personal jurisdiction, improper venue, and improper service of process. For the reasons set

forth below, the court should grant the motion and dismiss the complaint because this court does

not have personal jurisdiction over any of the defendants.

## BACKGROUND

Beaumont's complaint arises out of a series of alleged incidents regarding the use of the

residential home located at 5007 Monta Vista Drive-East, in Edgewood, Washington ("Monta

Vista house"). (*See* Complaint (#1) at ¶¶ 3.1 - 3.32.) According to Beaumont, during the events

underlying the complaint, he was a member of the household living at the Monta Vista house,

and was providing hospice care to a long time friend who was also residing there. (*Id.* at ¶ 3.1.)

Plaintiff is an openly gay and "devoutly religious" man affiliated with the Wolf Creek Sanctuary.

(*Id.* at ¶¶ 3.1, 3.3.)

At some point while he was providing hospice care at the Monta Vista house, Beaumont

began participating in the "Housing for Homeless Program," which, according to Beaumont,

houses homeless in unused space in private homes. (*Id.* at ¶¶ 3.2, 3.3.) Shortly after accepting

new residents at the Monta Vista house, Chief Knutson and "numerous other police officers"

made a visit to the home to request that Beaumont remove a resident who was a registered sex

offender. (*Id.* at ¶ 3.2.) According to Beaumont, Chief Knutson wanted the resident removed

even though he was not wanted for any criminal violations and was in full compliance with all

sex offender reporting requirements because Mayor Hogan lived nearby and wanted the resident

removed from Edgewood. (*Id.*) In response, Beaumont told Chief Knutson that he would not

remove the resident because he "has a moral obligation to provide food and shelter to his

brothers in need," according to the tenets of his religion. (*Id.*) According to Beaumont, Chief

Knutson "became agitated," made a derogatory comment about his religious affiliation, and left

the premises. (*Id.*)

Shortly after this incident, Beaumont alleges that the police, at Chief Knutson's direction,

"began a campaign of harassment" against him, which included, among other things, extensive

surveillance of the Monta Vista house, contacting neighbors and residents of the Monta Vista

house to request that they conduct surveillance, following and stopping Beaumont without

probable cause, "staking out" entrances to a church where homeless food services were provided,

contacting the County Health Department to persuade them to issue a citation regarding the

septic tank, contacting food bank staff for information about the members of the household, and

disclosing personal information to the food bank staff about Beaumont and the homeowner's

medical conditions. (*Id.* at ¶¶ 3.4-3.8, 3.11, 3.12, 3.14.) Chief Knutson allegedly repeatedly

entered the Monta Vista house without probable cause, contacted current and former house

residents to intimidate them to seek prosecution of Beaumont for "suggestive crimes that [he]

allegedly may have committed," encouraging Beaumont's consensual sex partners to file criminal charges against him, and attempting to have him arrested for indecent exposure "even though the house is occupied by all adult males who freely walk about as expected in their own home." (*Id.* at ¶ 3.13, 3.15, 3.20, 3.21, 3.25.)

Beaumont also alleges that he was issued a traffic infraction without probable cause and citations for running an unlicensed bed and breakfast and violating single family residence zoning laws. (*Id.* at ¶¶ 3.8, 3.10, 3.24.) After he was issued the traffic citation, Chief Knutson "mentioned that [Beaumont's] religion was just a bunch of dancing fags and that perhaps next time [Beaumont] would cooperate with him." (*Id.* at ¶ 3.9.) City Manager Bauer demanded that various agency inspectors be permitted entry into the home, which ultimately culminated in the arrest of Beaumont and the property owner. (*Id.* at ¶ 3.18.) Beaumont and the property owner were arrested on criminal charges for operating a hostel and operating a business without a license. (*Id.* at ¶¶ 3.16, 3.22.) Beaumont alleges that Chief Knutson provided "false and misleading" information on the probable cause affidavit that resulted in his arrest, and retaliated against him for invoking his right to remain silent, for hosting coffee chat groups for homeless to discuss protection of their civil rights, and for appearing in a television interview. (*Id.* at ¶¶ 3.23, 3.28 - 3.32.)

In addition to these above allegations, Beaumont alleges that City Manger Bauer failed to investigate similar housing situations like the one at the Monta Vista house but that were farther away from Mayor Hogan's home, and the City Council defendants failed to intervene to stop the illegal conduct. (*Id.* at ¶¶ 3.26, 3.27.)

On November 2, 2010, Beaumont filed suit in this court, alleging a violation of his First,

Page 4 - FINDINGS AND RECOMMENDATION

Fourth, and Fifth Amendment rights. (*Id.* at ¶¶ 4.1 - 4.4.) Beaumont seeks monetary compensation and that the court consider filing criminal charges against defendants. (*Id.* at ¶¶ 4.1 - 4.4, 5.6 - 5.7.)[1]

## APPLICABLE LEGAL STANDARD

For purposes of a motion to dismiss, the court views the complaint in the light most favorable to the plaintiff and must generally accept as true the facts alleged. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031 (1981). "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't.,* 839 F.2d 621, 623 (9th Cir. 1988) (citation omitted). *A pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987), *superceded by statute on other grounds as recognized in Lopez v. Smith,* 203 F.2d 1122, 1126-30 (9th Cir. 2000). Nevertheless, a *pro se* plaintiff's claims may be dismissed "where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Barrett v. Belleque,* 544 F.3d 1060, 1061 (9th Cir. 2008) (citation and internal quotation marks omitted).

/ / /

/ / /

/ / /

---

[1] The court notes that the complaint is missing page 12, which may have additional claims and remedies. However, because the complaint appears complete with regard to the factual allegations, this omission is not material for purposes of the current motion.

Page 5 - FINDINGS AND RECOMMENDATION

# DISCUSSION

Defendants move to dismiss the action under three theories.  First, the action should be dismissed pursuant to Federal Rule 12(b)(2) because there are insufficient contacts with Oregon for the court to exercise personal jurisdiction over any of the defendants.  Second, defendants contend that the action should be dismissed pursuant to Federal Rule 12(b)(3) because venue is not proper in this district since all of the underlying events occurred in Edgewood, Washington, which is located in the Tacoma Division of the United States District Court in Washington. Finally, defendants assert that the action should be dismissed pursuant to Federal Rule 12(b)(5) because service of process was not effectively made against Edgewood's elected and appointed officials to the extent that they are sued in their individual capacity.

## I.    Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is governed by Federal Civil Procedure Rule 12(b)(2).  *See* Fed.R.Civ.P. 12(b)(2).  "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008), *cert. denied,* 129 S. Ct. 1318 (2009), *citing Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990).  In evaluating the defendants' motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues."  *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001), *citing Data Disc, Inc. v. Systems Technology Assoc, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).  If the court decides the motion based on the pleadings and affidavits submitted by the parties without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss."

*Id., quoting Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995). The court accepts

uncontroverted allegations contained within the plaintiff's complaint as true and resolves

conflicts between statements contained within the parties' affidavits in the plaintiff's favor.

*Boschetto ,* 539 F.3d at 1015 (citations omitted).

"When no federal statute governs personal jurisdiction, the district court applies the law

of the forum state." *Id., citing Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir.

1998). Oregon's long-arm statute creates a standard co-extensive with federal jurisdictional

standards, *see* Or. R. Civ. P. 4L, so a federal court sitting in the District of Oregon may exercise

personal jurisdiction wherever it is possible to do so within the limits of federal constitutional

due process. *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 (9th Cir. 1990).

Federal due process jurisprudence requires that, to be subject to the personal jurisdiction

of a federal court, a nonresident defendant "must have at least 'minimum contacts' with the

relevant forum such that 'the exercise of jurisdiction does not offend traditional notions of fair

play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801

(9th Cir. 2004), *quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Two

forms of personal jurisdiction are available for application to a nonresident defendant: general

personal jurisdiction and specific personal jurisdiction. *Boschetto,* 539 F.3d at 1016.

A court has general personal jurisdiction over a defendant whose contacts with the forum

are "continuous and systematic" even if those contacts are wholly unrelated to plaintiff's claims.

*Schwarzenegger,* 374 F.3d at 801, *quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,*

466 U .S. 408, 416 (1984) and *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082,

1087 (9th Cir. 2000). "This is an exacting standard, as it should be, because a finding of general

jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its

activities anywhere in the world." *Id., citing Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th

Cir. 1986). If the court lacks general personal jurisdiction it may have specific personal

jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy

arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King Corp.*

*V. Rudzewicz,* 471 U.S. 462, 472-74 (1985).

The Ninth Circuit applies a three-part test to determine if the exercise of specific

jurisdiction over a nonresident defendant is appropriate:

> (1) [t]he non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or perform some
> act by which he purposefully avails himself of the privilege of conducting
> activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-
> related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice,
> *i.e.*, it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010) (citation

omitted).

The plaintiff must prove the first two prongs, in which case the defendant must come

forward with compelling evidence that the exercise of jurisdiction would be unreasonable.

*Boschetto,* 539 F.3d at 1016. If the plaintiff's "arguments fail under the first prong . . . [the

court] need not address whether the claim arose out of or resulted from [the plaintiff's] forum-

related activities or whether an exercise of jurisdiction is reasonable[.]" *Pebble Beach Co. v.*

*Caddy,* 453 F.3d 1151, 1155 (9th Cir. 2006).

Even liberally construing the complaint in Beaumont's favor, there are absolutely no

allegations that any of the defendants contacts were "continuous and systematic" enough to justify general personal jurisdiction. Thus, the only way this court could exercise personal jurisdiction is through specific jurisdiction. Beaumont appears to have filed in this court because he currently resides in Oregon at least temporarily when he is not homeless. However, he did not reside in Oregon, temporarily or otherwise, during the events that form the basis of his complaint, since he indicates that at the time, he was a "temporary member of the [Monta Vista household]," which is indisputably located in Edgewood, Washington. (Complaint at ¶ 3.1.) Even if he could be considered a resident for purposes of establishing specific jurisdiction over the defendants, there are no allegations that any of the defendants resided in Oregon, have ever been to Oregon, or that any of the underlying acts leading to this cause of action occurred in Oregon. Edgewood is located in Pierce County, Washington, with no physical offices, employees, or other business in Oregon. (Bauer Decl. (#17) at ¶¶ 3, 4.) City Manager Bauer has filed a declaration stating that he and all the defendants are residents of the State of Washington, and that none of them have city-related contacts in Oregon, nor have they performed any city-related business in Oregon. (*Id.* at ¶¶ 5-6.) Moreover, City Council members are required to reside in the City of Edgewood, Washington, pursuant Washington law, RCW 35A.13.020. (*Id.* at ¶ 6.)

Not only do all the defendants reside and conduct business in Washington, all of the allegations in the complaint took place in Edgewood, Washington. Even giving Beaumont the benefit of every doubt, the complaint does not allege that any of the defendants directed any action at Oregon or took any action with the intent to cause injury in Oregon. All of the allegedly unconstitutional actions that form the basis of the complaint were taken against Beaumont and

other members of the Monta Vista house, which was located in Edgewood Washington. There is not a single allegation that any of the conduct was taken in Oregon or against someone who was an Oregon resident at the time. The only allegation against Mayor Hogan is that he allegedly did not want a home in his Edgewood neighborhood to be affiliated with the "Housing for the Homeless" program, and therefore directed Chief Knutson and City Manager Bauer to take the actions against Beaumont that are detailed in the complaint. There are absolutely no specific allegations regarding Deputy Mayor Kelly or any of the City Council defendants, other than that they were aware of the alleged violations of Beaumont's civil rights perpetrated by Chief Knutson and City Manager Bauer. Even giving Beaumont the benefit of every doubt, none of the factual allegations are remotely connected to Oregon, other than that he now temporarily resides in the state.

Beaumont has not contested the factual showing provided in City Manager Bauer's affidavit that each of the defendants does not have sufficient "minimum contacts" with the State of Oregon in order to establish personal jurisdiction over them. Rather, Beaumont cites to 28 U.S.C. § 1343(a)(3) in support of his position that this court has original subject matter jurisdiction over this matter. However, Beaumont's reliance on that statute is misplaced because there is no dispute that the court has subject matter jurisdiction. What Beaumont does not seem to understand is that this court must also have personal jurisdiction over each of the defendants because of their contacts with Oregon. Therefore, this statute is not helpful to him for purposes of establishing that the court has personal jurisdiction.

While it would have been preferable that each named defendant provided the court with an affidavit or declaration attesting that they are residents of Washington, were not residents of

Oregon when the underlying facts transpired, do not consent to be sued in Oregon, or that they have not conducted any city-related or personal business in Oregon, the court finds insufficient factual allegations to support a finding that Oregon has sufficient "minimum contacts" over any of the defendants in their official or individual capacities.[2] Therefore, this court cannot constitutionally exercise personal jurisdiction over any of the defendants, and the motion to dismiss should be granted.

Defendants also seek to dismiss the action pursuant to FRCP 12(b)(3) due to lack of venue, and also pursuant to FRCP 12(b)(5) for insufficient service of process. The court need not reach the merits of these arguments because it has found that this court does not have personal jurisdiction over the defendants, and thus, the motion should be granted and the case dismissed.

## RECOMMENDATION

Defendants' motion to dismiss (#14) should be granted because plaintiff has failed to establish that jurisdiction is proper pursuant to Rule 12(b)(2). Because plaintiff cannot allege any facts justifying personal jurisdiction over any of the defendants in Oregon, this case should be dismissed with prejudice against all defendants and judgement entered accordingly.

/ / /

/ / /

---

[2] While not entirely clear from the complaint, Beaumont appears to be suing the individual defendants only in their official capacity, since he properly served them according to FRCP 4(j)(2)(B) governing service of process upon local governments, and the factual allegations all relate to the various defendants' alleged wrongdoing while performing their official duties.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 15th day of March 2011.

Paul Papak
United States Magistrate Judge